IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION

### NASHVILLE, DECEMBER TERM, 1921

CHATTANOOGA IMPLEMENT & MFG. CO. *v.* RAYMOND HAR-
LAND.[*]

### (*Nashville.* December Term, 1921.)

MASTER AND SERVANT. Employment of child held unlawful.

Under Acts 1911, chapter 57, section 1, making it unlawful for any
proprietor, etc., to employ, permit, or suffer to work any child
under fourteen in any factory, etc., and section 6, declaring it a
misdemeanor to employ any child, or for one. having a child under
his control as parent, guardian, or otherwise to permit or suffer
such child to be employed in violation thereof, it is unlawful for
an employer to permit or suffer a child under fourteen to be em-
ployed to assist an employee working on piecework.

Acts cited and construed: Acts 1911, ch. 57, sec. 1.

Case cited and distinguished: Kitts v. Kitts, 136 Tenn., 319.

FROM HAMILTON.

Error to the Circuit Court of Hamilton County.—HON.
OSCAR YARNELL, Judge.

*For authorities discussing the question of constitutionality of
child labor laws, see notes in 21 L. R. A., 797; 17 L. R. A. (N. S.), 602;
24 L. R. A. (N. S.), 121; L. R. A., 1918F, 829.

SIZER, CHAMBLISS & CHAMBLISS, for plaintiff in error.
H. W. SCHOOLFIELD, for defendant in error.

MR. L. D. SMITH, Special Judge, delivered the opinion of the Court.

The defendant in error, a child under fourteen years of age, while assisting his father at work in the foundry of the plaintiff in error molding castings, was injured by reason of hot iron escaping from the forms and burning his foot. Suit was brought by him to recover damages for personal injuries, and by his father to recover for loss' of services, against the plaintiff in error. The right of recovery, as the case comes to this court, is based upon an alleged violation of section 1 of chapter 57 of the Acts of 1911, which provides:

"It shall be unlawful for any proprietor, foreman, owner, or other person to employ, permit, or suffer to work any child less than fourteen years of age, in, about, or in connection with any mill, factory, workshop," etc.

There was a verdict and judgment in the circuit court in favor of the child for $1,500 and in favor of the father for $250. The court of civil appeals affirmed the judgment in favor of the child, but reversed that of the father, and dismissed his suit. *Certiorari* has been allowed in order to a review of the action of the court of civil appeals in the child's case.

The only question which we shall notice in this opinion arises upon the motion of the defendant below for peremptory instructions, and is whether the facts according to the evidence most favorable to the plaintiff constitute a violation of the statute referred to. The facts as stated in the opinion of the court of civil appeals, and which are not and cannot be controverted are:

"There is material testimony in the record to the effect that Raymond Harland worked in defendant's foundry two or three years prior to the accident, and that his mother, on different occasions, carried some of his meals to him while he was there at work. The said mother also testified that some time before the accident, and while Raymond was working at said foundry, the president of said corporation told her that if Raymond was as big as her big boy he would give him a job, that he had seen him putting down drags for his father, and that he was eager to work and smart. When Raymond was working in said foundry prior to and at the time of the accident, he was not employed by the defendant, but defendant had a number of employees who worked by the piece, that is, they were paid so much for each piece manufactured, and it very clearly appears from the record that these employees would pay the helpers. The assistance of the helper enabled the employee to make more pieces, and in that way earn more money, and there is testimony that Raymond was working in the capacity of a helper at the time his mother testifies that the president told her that if Raymond was as big as the big boy he would give him a job, that he had seen him working for his father, and that he was smart and willing to work. At the time of the accident, the defendant, Mack Armstrong, was employed by defendant corporation, and he had employed Raymond as a helper, and Raymond was working for him in defendant's foundry at the time he was injured. Dilliard Harland testified that Raymond had worked in defendant's foundry for two years before he was injured; that he had never been told not to permit him to work in said foundry; that he had been told not to permit him to work in the

grinding room, and that the boy had not worked in the grinding room after the witness had been told to keep him out of there, but had worked in the foundry on numerous occasions; that defendant's foreman had seen him working in the foundry, and that on the day of the accident the foreman was in the foundry continuously and saw the boy at work; and that the boy had worked for him, that is, the father, in said foundry."

The contention of plaintiff in error is that the statute only prevents the owner of the factory from employing a child under fourteen years, and that the words, "permit or suffer to work any child less than fourteen years of age in about, or in connection with any mill," apply only to those "having the child under his control as parent, guardian or otherwise."

This interpretation clearly can have no basis in section 1 of the act. In that section it is plainly and beyond doubt made unlawful for the owner of a mill or factory to permit or suffer to work a child under fourteen, just as it is made unlawful for the owner to employ the child to work. The argument is rested upon the language used in section 6 of the act, which is:

"Whoever employs any child and whoever having under his control as parent, guardian, or otherwise, any child, permits or suffers such child to be employed or work in violation of the foregoing provisions of this chapter shall be deemed guilty of a misdemeanor," etc.

It is said that in this section the intention of the legislature is manifest to apply the words "permit or suffer such child to be employed or work" to the parent, guardian, or other person having control of the child, and not to the owner, proprietor, or foreman employing the child.

The construction contended for is too strict and narrow in view of the remedial character of the legislation. The object and purpose of the law was to protect children from the hazards incident to work in a mill or factory, and in order to effectuate that object it was made unlawful for a child to be employed or to work in such dangerous places, and whoever employs the child or whoever permits the child to be employed or to work therein is to be punished as for a misdemeanor. Section 6 meant to fix a penalty against the persons who were prohibited from doing the things prescribed in section 1. The word "whoever" in section 6 is as much the subject of "permits or suffers" as it is of "employs," and section 6 applies the criminal penalty to the parent or guardian or other person having control of the child, as well as to the foreman, proprietor or owner.

"It is also well settled that remedial statutes [such as this] are construed liberally to accomplish their objects, correct the evils, and suppress the mischief aimed at." *Kitts* v. *Kitts,* 136 Tenn., 319, 189 S. W., 376.

The interpretation given by the trial court and the court of civil appeals is in accordance with that principle of construction, whereas that insisted upon by the plaintiff in error is a strained and unnatural one, when the statute is considered as a whole, and one calculated to defeat the evident humane purpose of the law.

There was no error in the action of the court of civil appeals with respect to the assignment of error dependent upon the interpretation of the statute referred to, nor in any other respect. Other assignments relating to error in the charge have been noticed in an oral opinion.

The result is the judgment of the court of civil appeals will be in all things affirmed, with costs.