JOSEPH J. BUTTITTA, Indiv. and d/b/a 4-B Acceptance, Plaintiff-Appellant, v. ARTHUR L. NEWELL, Defendant-Appellee.

First District (3rd Division)   No. 85—3114

Opinion filed November 23, 1988.

R.S. Maione, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Thomas L. Browne, Stephen R. Swofford, and Nancy G. Lischer, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Joseph J. Buttitta, appeals from the circuit court of Cook County's dismissal of his amended complaint against defendant, Arthur L. Newell, an attorney. Plaintiff's complaint sought recovery of damages allegedly resulting from defendant's negligence in failing to advise plaintiff that, under the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*), the "points" plaintiff charged on a residential mortgage loan to Catherine Saskill were treated as part of the interest rate charged on such loans in determining whether the loan was usurious. Saskill sued plaintiff for violation of the Interest Act and received a judgment against him which this court affirmed in *Saskill v. 4-B Acceptance* (1983), 117 Ill. App. 3d 336, 453 N.E.2d 761.

On May 23, 1985, the trial court dismissed plaintiff's cause of

action under section 2—619 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—619) on the grounds that it was barred by collateral estoppel. Defendant had argued in his motion to dismiss under section 2—619 that the findings of the trial court and this court that plaintiff had knowingly and intentionally violated the Interest Act barred the instant action against defendant. The trial court subsequently denied plaintiff's motion to vacate the dismissal.

On appeal, plaintiff contends he was not collaterally estopped from maintaining the instant action. We disagree and affirm the dismissal of plaintiff's cause of action under section 2—619.

■■ "The doctrine of collateral estoppel provides that an adjudication on the merits of an issue by a court of competent jurisdiction precludes relitigation of the [identical] issue in a subsequent action." (*Brumley v. Touche Ross & Co.* (1984), 123 Ill. App. 3d 636, 643, 463 N.E.2d 195.) The doctrine applies when a party, or someone in privity therewith, takes part in two separate, consecutive cases arising from different causes of action and some fact controlling, or question material to, the determination of both cases has been adjudicated against that party in the prior case. However, the judgment in the prior case will estop only those issues actually litigated and determined therein. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 252, 461 N.E.2d 959.) Moreover, the party sought to be estopped must have had a full and fair opportunity to litigate the issue in the prior action and an injustice must not be done to him under the circumstances of the subsequent case. *Fred Olson Motor Service v. Container Corp.* (1980), 81 Ill. App. 3d 825, 401 N.E.2d 1098.

The questions thus posed by this appeal are: (1) whether a fact controlling, or question material to, the determination of both the prior Interest Act violation proceeding and this case were adjudicated against plaintiff in that proceeding; (2) whether that fact or question was actually litigated in the prior action; (3) whether plaintiff had a full and fair opportunity to litigate that fact or question in the prior action; and (4) whether application of collateral estoppel would be unjust under the circumstances of this case.

That plaintiff and defendant assert opposite answers to these questions is due primarily to their characterization of the issue which they claim controls plaintiff's malpractice action.

Defendant claims the controlling issue is whether plaintiff knowingly and intentionally violated the Interest Act. He concludes that since that fact also controlled the prior action, plaintiff is collaterally estopped from relitigating it.

Plaintiff claims the controlling issue is whether defendant was

negligent in advising plaintiff that "points" are not considered in computing the interest rate charged on a mortgage loan. He concludes that since that issue was neither adjudicated nor controlling in the prior case, collateral estoppel is not a bar to his malpractice action. Moreover, plaintiff asserts that the trial court's and this court's findings of an intentional violation of the Interest Act were based merely on the fact that he charged a rate of interest which exceeded the maximum allowed by the Interest Act. He distinguishes such a violation of the Act from a violation based on the presence of an intent to charge a rate of interest which is known to exceed the maximum allowable rate. Plaintiff argues that only the existence of the latter intent in violating the Interest Act would preclude him from seeking a judgment that defendant's negligent legal advice caused the damages he incurred as a result of his violation of the Act.

In the portion of *Saskill* relevant to this appeal, we addressed the contention of the defendants therein, Buttitta and his company, 4-B Acceptance, that the loan at issue was exempt from the penalty provisions of section 6 of the Interest Act. Section 6 provides for statutory damages against lenders who "knowingly" contract for or receive unlawful interest. It also provides that *bona fide* errors in connection with a loan are not violations of section 6 if corrected within a reasonable time. (Ill. Rev. Stat. 1979, ch. 74, par. 6.) The defendants asserted that the interest charged Saskill resulted from a *bona fide* error made by Newell regarding the treatment of percentage points as interest. In rejecting this argument, we noted that whether a loan is usurious depends on whether the maker intended to charge an unlawful interest. We then found that, while the testimony at trial was conflicting and although Newell may have been mistaken about the computation of interest rates, the evidence before the trial court made it clear that both the defendants and Newell knew that the former were charging more for their money than the Interest Act permitted and that the defendants could not evade the statute by assessing charges for their money disguised as something other than interest. Finally, we concluded that the trial court's findings that the defendants had intentionally charged unlawful interest and that the usurious interest did not result from *bona fide* errors were not against the manifest weight of the evidence. *Saskill*, 117 Ill. App. 3d at 340-41.

■ Thus, the fact that plaintiff knowingly and intentionally violated the Interest Act clearly controlled the prior action. Moreover, our opinion clearly belies plaintiff's contention that he did not know he was charging an unlawful rate of interest but was merely relying on defendant's advice in doing so.

The fact that plaintiff knowingly charged an unlawful interest rate and thus intentionally violated the Interest Act also controls his malpractice action against defendant. Upon a trial of that action, those facts would necessarily dispose of his claim that defendant's negligence caused the damages he incurred in the prior proceeding. Thus, plaintiff is barred from relitigating the cause of those damages under the pretense that they were incurred as a result of defendant's negligence.

■ Plaintiff cites *Gelsomino v. Gorov* (1986), 149 Ill. App. 3d 809, 502 N.E.2d 264, as supporting the instant action. Specifically, he asserts that *Gelsomino* states that an attorney may not assert collateral estoppel to insulate himself from a malpractice claim although his client was found to have committed a crime in the earlier proceeding asserted as establishing the collateral estoppel bar.

Plaintiff clearly misconstrues the significance of the holding in *Gelsomino* on the collateral estoppel issue raised therein. In *Gelsomino,* the plaintiffs sued the attorneys who represented them in a Federal court breach of contract action against an insurer which resulted in a jury finding that the plaintiffs had committed arson and fraud. The defendants contended that the district court's denial of the plaintiffs' post-trial motion collaterally estopped the malpractice action because that denial effectively decided the issue of adequacy of representation. The post-trial motion had asserted, *inter alia,* that the district court's denial of the plaintiff's request for a continuance before trial had caused defense counsel to be ill-prepared. The appellate court rejected the defendants' argument simply on the ground that the district court's ruling on the post-trial motion lacked the certainty necessary to invoke collateral estoppel because it had not specifically passed upon the errors and omissions alleged in the malpractice action. (*Gelsomino,* 149 Ill. App. 3d at 812-13.) The appellate court did not state the broad rule for which plaintiff cites *Gelsomino.* Moreover, it cannot be said that the judgments of the trial court and this court and specifically the findings which each court made in entering those judgments lacked the certainty necessary to invoke collateral estoppel here. Consequently, *Gelsomino* is of no avail to plaintiff.

■ We also conclude that, as reflected in our prior opinion, the issue of whether plaintiff knowingly and intentionally violated the Interest Act was actually litigated in the trial and here and that plaintiff had a full and fair opportunity to litigate that issue in both courts.

Finally, nothing in the circumstances of this case warrants a conclusion that it would be unjust to apply the doctrine of collateral

estoppel to the instant action. In this regard, we believe that the cases which defendant cited in the trial court in support of his motion to dismiss under section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) and on which he relies here as disposing of the only real issue before this court, *viz.*, whether we will aid an intentional wrongdoer, whose cause of action is founded on an intentional violation of Illinois law, conclusively establish that it is not unjust to bar plaintiff from maintaining his malpractice action against defendant.

In *Mettes v. Quinn* (1980), 89 Ill. App. 3d 77, 411 N.E.2d 549, the plaintiff sued her attorney for advising her to satisfy her obligations under a settlement agreement by taking action which he knew or should have known would subject her to charges of fraud sufficient to void the agreement. Affirming the dismissal of the action, the court noted that the settlement agreement was set aside due to the plaintiff's fraudulent representations and that she was attempting to recover for legal advice which allowed her fraud to be discovered. The court also found it immaterial whether the legal advice was negligent because the plaintiff was essentially attempting to benefit from her fraud. *Mettes,* 89 Ill. App. 3d at 80.

In *Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 462 N.E.2d 774, the plaintiff sued attorneys who advised him to establish his legal residence outside Illinois to avoid service of process in a State tax proceeding. The trial court dismissed the action on the ground that by admitting that he moved out of Illinois to avoid service of process the plaintiff admitted illegal conduct precluding him from invoking the court's aid to recover damages. Affirming the dismissal, the appellate court approved the trial court's reliance on *Mettes.* The court also noted that the *Mettes* and *Robins* plaintiffs had come to court with unclean hands seeking relief from their wrongful conduct. Finally, it refused to pass judgment on the legal advice given the plaintiff as its refusal to aid him was based solely on his admitted attempt to evade the law. *Robins,* 123 Ill. App. 3d at 200-02. See also *Makela v. Roach* (1986), 142 Ill. App. 3d 827, 492 N.E.2d 191; *Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 507 N.E.2d 164.

Plaintiff's attempt to distinguish *Mettes* and *Robins* on the ground that, unlike the plaintiffs therein, he did not commit a fraud in violating the Interest Act is meritless. In so arguing, we believe plaintiff focuses narrowly on the rule stated in *Mettes,* and repeated in *Robins,* that courts will not aid a fraudfeasor who invokes the court's jurisdiction to profit from his own fraud by recovering damages (*Mettes,* 89 Ill. App. 3d at 80; *Robins,* 123 Ill. App. 3d at 201) and totally ignores

the cases cited in *Mettes* on which that rule is based.

Without going into unnecessary detail, we can state that those cases: (1) stand for the general principle that the courts do not aid parties whose causes of action are founded on *any* illegal or immoral acts, including the violation of a statute, to assert rights growing out of such acts or to relieve themselves of the consequences of those acts; and (2) are not limited to situations involving fraud. (See, *e.g.*, *Newton v. Illinois Oil Co.* (1925), 316 Ill. 416, 422, 147 N.E. 465; *Kessinger v. Standard Oil Co.* (1925), 245 Ill. App. 376, 380; *Bonnier v. Chicago, Burlington & Quincy R.R. Co.* (1953), 351 Ill. App. 34, 53, 113 N.E. 615; *Tovar v. Paxton* (1975), 29 Ill. App. 3d 218, 220-21, 330 N.E.2d 247; see also *Haralampopoulos v. Capital News Agency, Inc.* (1966), 70 Ill. App. 2d 17, 24, 217 N.E.2d 366.) As such, that plaintiff may not have committed a fraud in violating the Interest Act is totally unavailing to him. Because of the scope of the rule barring plaintiff from profiting from his illegal conduct, we also find unavailing plaintiff's characterization of a violation of the Interest Act as a *malum prohibitum,* rather than a *malum in se.*

For all of the foregoing reasons, the order of the circuit court dismissing plaintiff's cause of action is affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.